## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Huntington National Bank,
successor-by-merger to TCF National
Bank,

        Plaintiff,

   v.

Infinite Education Services, Inc. and
Charles Hill,

        Defendants.

Civil No. _____

**COMPLAINT**

For its Complaint against Defendants, Plaintiff Huntington National Bank, successor-by-merger to TCF National Bank, states and alleges the following:

## PARTIES

1.     Plaintiff Huntington National Bank ("Huntington") is a national banking association.  Huntington's articles of association designate Ohio as its main office.  As a result, Huntington is a citizen of Ohio for purposes of diversity jurisdiction.  *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 318 (2006).  Huntington is the successor-by-merger to TCF National Bank ("TCF").  Huntington and TCF are hereafter referred to as "Creditor."  Creditor also transacts business from its offices in Plymouth, Minnesota, including the finance transaction at issue in this matter.

2.     Defendant Infinite Education Services, Inc. ("Debtor") is a Georgia corporation with its principal place of business located at 5950 Crooked Creek Road

Northwest, Suite 170M, Peachtree Corners, GA 30092.  Debtor is thus a citizen of

Georgia.

3.      Defendant Charles Hill ("Hill") is a Georgia resident whose last known

address is 2649 Havasu Trace NW, Norcross, GA 30071.  Upon information and belief,

Hill is Debtor's President.  Hill is a citizen of Georgia.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter based on

diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1), as the parties are citizens of

different states and the amount in controversy exceeds $75,000.

5.      This Court has personal jurisdiction over Defendants, by consent of the

parties under their agreements.

6.      Venue is proper in this district by consent of the parties under their

agreements, and pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events

giving rise to the claims occurred in this district.

## BACKGROUND

**Debtor Purchases Software and Equipment**

7.      On November 6, 2020, Debtor purchased software and equipment from

Bright Vanguard, LLC ("Bright Vanguard"), a broker based in San Antonio, Texas,

including Software, Fees, Costs and Equipment:  HPE ProLiant DL380 Gen 10 Server,

Storage, Software & Related Equipment as listed on Bright Vanguard's Invoice

("Invoice").  A true and correct copy of the Invoice is attached as **Exhibit A** and

incorporated herein by reference.   (The items listed on the Invoice are collectively referred to hereafter as the "Software and Equipment.")

**Installment Payment Agreement**

8.      On November 9, 2020, Debtor and Creditor entered into an Installment Payment Agreement Number 001-0803723-500 ("IPA").  A true and correct copy of the IPA is attached as **Exhibit B** and incorporated herein by reference.  The IPA sets forth the terms of a loan from Creditor to Debtor, with a financed amount of $287,402.24 ("Financed Amount"), which enabled Debtor to purchase the Software and Equipment from Bright Vanguard ("Finance Transaction").

9.      The IPA provides that Debtor will pay Creditor 60 payments of $5,621.67 each.

10.      Under the IPA, if any amount payable is not paid within 10 days of its due date, Creditor may impose a late fee of 10% of the amount of the past due payment, and may, in addition, charge interest on the unpaid amount at 18% per annum.

11.      Debtor represented and warranted in the IPA that "Debtor has not received or been promised any rebates, credits, refunds or other compensation, in cash or in kind, with respect to the Collateral."

12.      The IPA requires Debtor to "indemnify and hold harmless Creditor . . . from and against any and all claims or suits for any loss, damages or injury sustained by any person whatsoever by reason of the financing, use, possession or disposition of the Collateral."

13.     The IPA provides that an event of default occurs when, among other things: (a) Debtor fails to pay any payment or other amount when due; (b) Debtor fails to comply with any other covenant or agreement and such failure continues for 10 days after notice by Creditor; (c) any representation or warranty by Debtor set forth in or made in connection with the IPA shall prove materially false or misleading; (d) Debtor defaults under any other obligation to Creditor; and (e) any material indebtedness of Debtor or any Guarantor is accelerated or payment in full thereof is demanded ("Event of Default").

14.     Upon the occurrence of an Event of Default, the IPA provides that Creditor may, among other things: (a) declare immediately due and payable and recover from Debtor, as liquidated damages and not as a penalty, the sum of all amounts then due, plus the present value of all unpaid payments for the remaining term of the IPA; (b) charge interest on the unpaid amount of liquidated damages due at 18% per annum; (c) exercise any and all rights and remedies available to a secured creditor under the Uniform Commercial Code as in effect in the State of Minnesota; and (d) exercise any and all other rights and remedies available by law or in equity or by any other agreement.

15.     The IPA also provides that Creditor shall recover from Debtor, and Debtor agrees to pay, all costs and expenses incurred by Creditor in the exercise of any right or remedy available to it under the IPA, including costs of obtaining money damages and attorneys' fees and expenses for any purpose related to the IPA.

**Security Interest in the Collateral**

16.     In the IPA, Debtor granted Creditor a security interest in, among other things: "all of Debtor's right, title and interest in the Equipment and Software, including

4

without limitation its license(s) and rights to use the Software, together with the license agreement and any related service agreement and all rights thereunder, all upgrades, modifications, improvements, releases and versions related to the Software, and all proceeds of all the following" (collectively, "Collateral").

17.     Creditor perfected its security interests in the Collateral by filing a UCC financing statement ("UCC Financing Statement").  A true and correct copy of the UCC Financing Statement is attached as **Exhibit C** and incorporated herein by reference.

**Pay Proceeds and Acceptance Confirmation**

18.     In connection with the IPA, Debtor provided Creditor with a Pay Proceeds and Acceptance Confirmation dated November 9, 2020 ("Confirmation").  A true and correct copy of the Confirmation is attached as **Exhibit D** and incorporated herein by reference.

19.     Under the Confirmation, "Debtor hereby confirms, represents, warrants and agrees to and for the benefit of the Creditor that (i) all of the Software and Equipment described in the IPA has been delivered to Debtor at the Location set forth in the IPA and has been accepted by Debtor through a duly authorized representative, (ii) the Description of the Software and Equipment set forth in the IPA is complete and correct, (iii) the Software and Equipment is exactly what Debtor ordered and is satisfactory in all respects and has been accepted by Debtor as of the date set forth below, and (iv) there has been no adverse change in the business or financial condition of Debtor or any guarantor of the IPA since the day the credit application and, if applicable, most recent financial statements of Debtor and any guarantors were submitted to Creditor."

5

20.     In the IPA, Debtor also represented and warranted that "at the time Creditor pays these Software and Equipment vendor(s) the Financed Amount, the Software and Equipment shall have been delivered to the location and Debtor shall have irrevocably accepted the Collateral for all purposes under this IPA."

21.     In the Confirmation, "Debtor hereby irrevocably instructs and authorizes Creditor to pay the following vendor or vendors for the Software and Equipment:  Bright Vanguard" the amount of $287,402.24 (*i.e.,* the Financed Amount).

22.     Based on Debtor's Confirmation, together with Debtor's representations and warranties in the IPA, the Creditor funded the Financed Amount.

**The Continuing Guaranty**

23.     The IPA is secured by, among other things, the Continuing Guaranty, dated November 9, 2020, from Hill ("Guarantor") in favor of Creditor ("Guaranty").  A true and correct copy of the Guaranty is attached as **Exhibit E** and incorporated herein by reference.

24.     Under the Guaranty, the Guarantor unconditionally and absolutely guaranteed the full and prompt payment of all obligations of the Debtor including, without limitation, amounts due under the IPA.

25.     The Guaranty provides that the Guarantor's liability includes, but is not limited to, all costs and expenses (including court costs and legal fees) incurred by Creditor in connection with enforcing the Guaranty and all obligations of the Debtor.

**Other Documents Relating to the Finance Transaction**

26.     A true and correct copy of an Insurance Addendum, dated November 9, 2020, from Debtor in favor of Creditor (the "Insurance Addendum"), is attached as **Exhibit F** and incorporated herein by reference.

27.     A true and correct copy of an Authorization for Automatic Electronic Payment, dated November 9, 2020, from Debtor in favor of Creditor ("Authorization"), is attached as **Exhibit G** and incorporated herein by reference.

**Debtor and Guarantor Materially Default Under The Credit Agreements**

28.     The IPA, the Confirmation, the Guaranty, the Insurance Addendum, and the Authorization, and any other agreements between the parties, or documents evidencing or relating to the Finance Transaction, are referred to herein collectively as the "Credit Agreements."

29.     On January 7, 2022, Creditor provided notice of default to Debtor and Guarantor by letter sent via Federal Express ("Default Notice").  A true and correct copy of the Default Notice is attached as **Exhibit H** and incorporated herein by reference.

30.     Debtor and Guarantor have defaulted under the Credit Agreements for the following reason:  Debtor's failure to make the required monthly payments when due in violation of the IPA.

31.     On January 26, 2022, Creditor provided a notice of default and acceleration to Debtor and Guarantor by letter sent via Federal Express ("Acceleration Notice").  A true and correct copy of the Acceleration Notice is attached as **Exhibit I** and incorporated herein by reference.

32.     In the Acceleration Notice, Creditor provided a formal notice to Debtor and Guarantor that Events of Default have occurred under the Credit Agreements based on the following:  Debtor's failure to make the required monthly payments when due in violation of the IPA.  Creditor also notified Debtor and Guarantor that it was accelerating all payments due under the Credit Agreements, demanding payment of the accelerated balance, turnover of equipment, and payment of attorneys' fees, and reserving all rights and remedies available to it under the Credit Agreements.

33.     The occurrence of an event of default entitles Creditor to exercise all of its rights and remedies under the Credit Agreements, including, but not limited to: (a) accelerating the entire indebtedness; (b) obtaining a joint and several money judgment against Debtor and Guarantor (plus all accrued interest, charges, attorneys' fees, and expenses incurred by Creditor in connection with its efforts to recover the total amount due); (c) recovering immediate possession of all Collateral identified in the Credit Agreements; and (d) enforcing its security interests under the Uniform Commercial Code.

34.     As of January 26, 2022, the aggregate unpaid amounts due and owing under the Credit Agreements ("Total Amount Due") is at least the following, which is exclusive of additional accruing interest, charges, attorneys' fees, and all other applicable costs, fees, and expenses:

8

| |
|---|
| 12/12/21 and 1/12/22 Installments:  $11,243.34 |
| PV of 46 Installments @ 6.49%:  $228,938.83 |
| Refund ACH Fee: $30.00 |
| 5% Penalty:  $11,446.95 |
| Late Fees:  $1,689.51 |
| **TOTAL AMOUNT DUE:  $253,348.63** |

## CLAIMS

### COUNT I – BREACH OF CONTRACT (AGAINST DEBTOR)

35. Creditor restates and realleges the preceding paragraphs as though fully set forth herein.

36. The Credit Agreements are valid and binding contracts.

37. Creditor has performed all of its obligations under the Credit Agreements.

38. By its actions and inactions described herein, Debtor has breached its obligations under the Credit Agreements.

39. Among other things, Debtor's failure to make any payments as and when due under the IPA constitute events of default under the Credit Agreements.

40. Debtor's defaults under the Credit Agreements constitute material breaches thereunder.

41. As a direct and proximate result of Debtor's material breaches, Creditor has suffered, and continues to suffer, damages.

42.     Debtor's default entitles Creditor to exercise all of its rights and remedies under the Credit Agreements, including, but not limited to, the right to recover the Total Amount Due, plus all additional accrued interest, charges, reasonable attorneys' fees, expenses, and costs.

43.     Creditor requests that the Court enter an Order: (a) finding that Debtor has materially breached its obligations under the Credit Agreements; and (b) awarding damages in favor of Creditor and against Debtor in the amount of at least $253,348.63 along with any additional accrued interest, additional charges, reasonable attorneys' fees, expenses, and costs.

## COUNT II – BREACH OF CONTRACT (AGAINST GUARANTOR)

44.     Creditor restates and realleges the preceding paragraphs as though fully set forth herein.

45.     The Guaranty is a valid and binding contract.

46.     Debtor's defaults under the Credit Agreements and Guarantor's failure to perform its guarantor obligations in connection with the Credit Agreements entitle Creditor to exercise all of its rights and remedies under the Guaranty, including, but not limited to, the right to recover all amounts due and owing under the Guaranty, plus all additional accrued interest, charges, reasonable attorneys' fees, expenses, and costs.

47.     Guarantor is unconditionally and absolutely liable for all amounts due and owing under the Guaranty and Credit Agreements.  Despite demand, Guarantor has failed and refused to pay such amounts.  This constitutes a default and material breach of the Guaranty.

48.     As a direct and proximate result of Guarantor's default and material breach of the Guaranty, Creditor has suffered, and continues to suffer, damages.

49.     Creditor requests that the Court enter an Order: (a) finding that Guarantor has breached its obligations under the Guaranty; and (b) awarding damages in favor of Creditor and against Guarantor in an amount of at least $253,348.63, along with any additional accrued interest, additional charges, reasonable attorneys' fees, expenses, and costs.

## COUNT III – CLAIM AND DELIVERY

50.     Creditor restates and realleges the preceding paragraphs as though fully set forth herein.

51.     Creditor has a security interest in all of the Collateral described in the Credit Agreements, and has perfected those security interests.

52.     Pursuant to the Credit Agreements, Creditor is entitled to take immediate possession of the Collateral upon the occurrence of an Event of Default.

53.     By the actions and inactions described in the preceding paragraphs, Debtor and Guarantor have defaulted on their obligations under the Credit Agreements.

54.     All conditions precedent to the right to immediate possession of the Collateral have been met.

55.     Creditor, as a secured party, has an absolute right to take immediate possession of the Collateral and to sell and dispose of the same.

56.     By reason of the events of default and pursuant to Minn. Stats. §§ 336.9-101 *et seq.*, Chapter 565 of Minnesota Statutes, the terms of the IPA, other applicable

Credit Agreements, and the common law, the Court is empowered to issue an order awarding possession of the Collateral to Creditor.

57.     Creditor requests that the Court enter an Order that Creditor is entitled to the immediate possession of the Collateral described in the Credit Agreements, and that Creditor may dispose of the Collateral in accordance with the requirements of Chapter 565 of Minnesota Statutes and any other applicable law.

## COUNT IV - PRIORITY

58.     Creditor restates and realleges the preceding paragraphs as though fully set forth herein.

59.     Any purported liens or interests upon the Collateral held by Debtor, or any other unknown persons or entities, including, but not limited to, any other party claiming rights, may be junior, subordinate, and subject to Creditor's security interest under the Credit Agreements.

60.     Creditor's security interest is a first priority lien on the Collateral, and Debtor is barred and foreclosed from any interest in the Collateral.

## COUNT V – ALTERNATIVE CLAIM FOR UNJUST ENRICHMENT

61.     Creditor restates and realleges the preceding paragraphs as though fully set forth herein.

62.     Through its misconduct described herein, including without limitation its breaches and defaults under the Credit Agreements, Debtor has deprived Creditor of thousands of dollars that Creditor financed under the Credit Agreements.

63.     It would be unjust to permit Debtor to benefit from its wrongful conduct.

64.    Debtor would be unjustly enriched if it were allowed to disregard its obligations and refuse to pay money due and owing under the Credit Agreements.

65.    As a direct and proximate result of Debtor's wrongful actions, Creditor has incurred and is entitled to recover damages against Debtor, along with all accrued interest, additional charges, attorneys' fees, expenses, and costs.

## COUNT VI – ALTERNATIVE CLAIM FOR PROMISSORY/EQUITABLE ESTOPPEL

66.    Creditor restates and realleges the preceding paragraphs as though fully set forth herein.

67.    Pursuant to the Credit Agreements, Debtor and Guarantor promised to pay Creditor all amounts due and owing under the Credit Agreements.

68.    Debtor and Guarantor made these promises with the intent that Creditor rely on them.

69.    In reasonable reliance on these promises, Creditor proceeded to finance Debtor's purchase of the Software and Equipment to its detriment.  Creditor has been damaged by its reasonable reliance on Debtor's and Guarantor's promises.

70.    Debtor's and Guarantor's promises must be enforced to prevent an injustice.

71.    As a direct and proximate result of Debtor's and Guarantor's wrongful actions, Creditor has incurred and is entitled to recover damages against Debtor and Guarantor, along with all accrued interest, additional charges, reasonable attorneys' fees, expenses, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Creditor respectfully requests that the Court enter judgment against Defendant Debtor and Defendant Guarantor as follows:

a.      Finding that Debtor has defaulted under the Credit Agreements, and that Creditor is entitled to exercise all of its rights and remedies under the Credit Agreements;

b.      Finding that Debtor is liable for all damages awarded herein;

c.      Finding that Guarantor has breached the Guaranty, and that Creditor is entitled to exercise all of its rights and remedies under the Guaranty;

d.      Finding that Guarantor is liable for all damages awarded herein and as prescribed by the Guaranty;

e.      Awarding damages, including all accrued interest, charges, and reasonable attorneys' fees, expenses, and costs, in favor of Creditor and against Debtor and Guarantor, jointly and severally, in an amount to be determined by motion or at trial;

f.      Finding that Creditor's security position is prior, paramount, and superior to all other interests or liens against the Collateral pursuant to Minnesota law, and barring and foreclosing all persons, known and unknown, named or unnamed herein, from any interest in the Collateral;

g.      For an Order that Creditor is entitled to immediate possession of the Collateral identified in the Credit Agreements, and that Creditor may liquidate that Collateral in accordance with the requirements of Chapter 565 of Minnesota Statutes and other applicable law; and

h.      Such other and further relief as this Court deems just and equitable.

14

Dated:  January 28, 2022

**TAFT STETTINIUS & HOLLISTER LLP**

By:  *s/ Mark G. Schroeder*
    Mark G. Schroeder (#171530)
    Daniel N. Moak (#347474)
2200 IDS Center
80 South Eighth Street
Minneapolis, Minnesota  55402-2157
(612) 977-8400
Email:  mschroeder@taftlaw.com
       dmoak@taftlaw.com

**ATTORNEYS FOR PLAINTIFF HUNTINGTON NATIONAL BANK, SUCCESSOR-BY-MERGER TO TCF NATIONAL BANK**

72482693v1