UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Huntington National Bank, *successor-by-merger to TCF National*, | File No. 22-cv-237 (ECT/TNL) |
| Plaintiff, | |
| v. | **OPINION AND ORDER** |
| Infinite Education Services, Inc., and Charles Hill, | |
| Defendants. | |

---

Daniel N. Moak and Mark G. Schroeder, Taft Stettinius & Hollister LLP, Minneapolis, MN, for Plaintiff Huntington National Bank.

---

Plaintiff Huntington National Bank, successor-by-merger to TCF National, seeks entry of a default judgment against Defendants Infinite Education Services, Inc., and Charles Hill. ECF No. 15. Huntington alleges that Defendants breached their obligations by failing to make monthly payments as required under the parties' credit agreements. The judgment Huntington seeks against Defendants (jointly and severally) would include actual damages of $257,940.36, attorneys' fees and expenses, and post-judgment interest under 28 U.S.C. § 1961. Huntington's motion will be granted.[1]

---

[1] The Clerk properly entered Defendants' default. ECF No. 12. The summons and complaint were served on Defendant Charles Hill on January 28, 2022, ECF No. 5, and on Defendant Infinite Education Services, Inc., on February 13, 2022, ECF No. 7, and they have not responded or otherwise appeared. *See generally*, Docket; *see also* Schroeder Decl. [ECF No. 11] ¶¶ 4–6. Plaintiff also has served the motion for default judgment and supporting papers on Defendants. ECF Nos. 23–24. A hearing on the motion was held on October 17, 2022. ECF No. 25. Defendant did not appear or otherwise respond.

The basic process for determining whether a default judgment should be entered is straightforward. Entry of default means that the "factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." 10A Mary K. Kane, *Federal Practice and Procedure* § 2688.1 (4th ed. Apr. 2022 Update) (footnotes omitted). Thus, it must first be determined whether the taken-as-true factual allegations of the complaint "constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Marshall v. Baggett*, 616 F.3d 849, 852 (8th Cir. 2010) (quoting *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010)). If the taken-as-true allegations of the complaint constitute a legitimate cause of action, then the amount and other terms of the default judgment must be ascertained. *See Hagen v. Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042 (8th Cir. 2000).

Start with the factual allegations in the complaint, which are accepted as true. Huntington National Bank ("Huntington") is a national banking association, and a successor-by-merger to TCF National Bank ("TCF"). Compl. [ECF No. 1] ¶ 1. The detailed complaint describes a financing arrangement between TCF, Defendant Infinite Education Services, Inc. ("Infinite Education"), and Defendant Charles Hill, whereby TCF financed Infinite Education's purchase of software and equipment. On November 6, 2020, Infinite Education purchased software and equipment from Bright Vanguard LLC, a broker in San Antonio, Texas, as reflected in an Invoice attached to the Complaint. Compl. ¶ 7, Ex. A.

To finance this purchase, Infinite Education and its Guarantor (and President) Charles Hill, executed several agreements with TCF, as described in the complaint: an

Installment Payment Agreement ("IPA"), a Pay Proceeds and Acceptance Confirmation ("Confirmation"), a Continuing Guaranty ("Guaranty"), and an Authorization for Automatic Electronic Payment ("Authorization") (together, the "Credit Agreements"). *See* Compl. ¶¶ 7–27.  Infinite Education and TCF entered into the IPA on November 9, 2020. The IPA set forth the terms of a loan from TCF to Infinite Education for $287,402.24 to finance Infinite Education's software and equipment purchase.  Compl. ¶ 8, Ex. B.  The IPA provided that Infinite Education was to make monthly payments of $5,621.67 to TCF over 60 months.  Compl. ¶ 9, Ex. B.  The IPA provided other rights and remedies to TCF, including TCF's right to impose a late fee or charge interest for late payments, and TCF's right to obtain attorneys' fees, costs, and expenses associated with exercising any right or remedy available to it under the IPA.  *Id*. ¶¶ 10–15, Ex. B.  The IPA was secured by a Guaranty from Charles Hill in favor of TCF.  *See* Compl. ¶ 23, Ex. E.  Under the Guaranty, Charles Hill "unconditionally and absolutely guaranteed the full and prompt payment" of Infinite Education's obligations under the IPA.  *Id*. ¶ 24.  In connection with the IPA, Infinite Education provided TCF with the Confirmation, dated November 9, 2020.  *Id*. ¶ 18, Ex. D.  The Confirmation confirmed that the software and equipment had been delivered satisfactorily and as described in the IPA, and it authorized TCF to pay Bright Vanguard the financed amount.  *Id*. ¶ 19, Ex. D.  Accordingly, TCF funded the financed amount.  *Id*. ¶ 22, Ex. D.

In December 2021, Infinite Education stopped making its monthly payments.  *Id.* ¶ 29, *see also* Ex. H; Am. Shamblott Decl. [ECF No. 23] ¶ 5.  On January 7, 2022, TCF sent Defendants a notice of default.  Compl. ¶ 29, Ex. H.  Defendants still did not pay, and

3

on January 26, 2022, TCF sent another notice of default and demanded payment of all outstanding amounts from Infinite Education and Charles Hill, pursuant to the terms of the parties' Credit Agreements. *Id*. ¶¶ 31–32, Ex. I.

These taken-as-true allegations constitute legitimate causes of action for breach of contract against Infinite Education and Charles Hill, *see id*. ¶¶ 35–59.[2] Minnesota law applies because the IPA and the Guaranty contain Minnesota choice-of-law provisions. Ex. B ¶ 11; Ex. E. Under Minnesota law, the elements of a breach-of-contract claim are "(1) formation of a contract, (2) performance by plaintiff of any conditions precedent to his right to demand performance by the defendant, and (3) breach of the contract by defendant." *Park Nicollet Clinic v. Hamann*, 808 N.W.2d 828, 833 (Minn. 2011). Huntington plainly and plausibly pleads these elements against both Defendants. The formation of the IPA and the Guaranty, and other agreements are alleged in detail, and nothing about Huntington's allegations leaves room to question the validity of either of these two contracts' formation. The IPA imposed no conditions precedent to TCF's ability to accelerate payments upon Infinite Education's failure to make payment, *see* Ex. B. ¶¶ 7, 8, but if giving notice was a condition precedent to triggering TCF's remedies under the IPA or any other contract, then Huntington has alleged that it gave notice. *See* Compl. ¶¶ 29–32; Exs. H, I. Huntington's allegations show that Infinite Education and Charles Hill, as guarantor, did not fulfill their payment obligations. Compl. ¶¶ 30, 34. Finally, if

---

[2]     Although the Complaint includes six counts, Huntington's Motion for Default Judgment focuses only on Counts I & II—for breach of contract against Infinite Education and Charles Hill, respectively. Mem. in Supp. [ECF 17] at 6 n.3.

Huntington were required to allege damages to state a claim for breach of contract, *see Park Nicollet Clinic*, 808 N.W.2d at 833 n.5 ("We have recognized that the plaintiff may not have to allege that the breach caused damages in order to state a claim for breach of contract."), it has done so.  Compl. ¶ 34.

Here, Huntington seeks only monetary relief.  *See* Mem. in Supp. at 7–8.  Though Defendants' liability is established, Huntington "must still prove its actual damages to a reasonable degree of certainty" before entry of default judgment.  *Everyday Learning Corp. v. Larson*, 242 F.3d 815, 819 (8th Cir. 2001).  "A district court may determine damages by computing from the facts of record the amount that the plaintiff is lawfully entitled to recover and enter judgment accordingly."  *Radisson Hotels Int'l, Inc. v. Fairmont Partners LLC*, No. 19-cv-1176 (WMW/BRT), 2020 WL 614810, at *2 (D. Minn. Feb. 10, 2020).

Huntington has demonstrated to a reasonable degree of certainty that it is entitled to recover actual damages of at least $257,940.36, exclusive of additional accruing interest, attorneys' fees, and other applicable costs, fees, and expenses.  *See* Compl., Mem. in Supp. at 4; Am. Shamblott Decl. ¶ 5.  The IPA provides that following an Event of Default, TCF could "declare immediately due and payable and recover from [Infinite Education], as liquidated damages and not as a penalty, the sum of all amounts then due, plus all unpaid Payments for the remaining term of this IPA, discounted from their respective due dates at the implicit interest rate for this IPA," plus "a fee equal to . . . 4% [of this amount] if it occurs during months 13 through 24."  Ex. B ¶ 8.

Huntington also seeks $6,788.95 in reasonable attorneys' fees and costs.  Mem. in Supp. at 7; Moak Decl. [ECF No. 18] ¶ 10; Schroeder Decl. [ECF No. 26] ¶ 4.  The IPA

provides that upon an Event of Default, TCF may recover "all costs and expenses incurred . . . in the exercise of any right or remedy available to it under this IPA . . . including . . . attorneys' fees and expenses." Ex. B ¶ 8. Huntington has submitted documentation establishing both its entitlement to and the reasonableness of its request for attorneys' fees and costs. Moak Decl. ¶¶ 5–10; Schroeder Decl. [ECF No. 26] ¶¶ 3–4.

Finally, Huntington seeks post-judgment interest. Federal law governs post-judgment interest in a diversity action. *See Happy Chef Sys., Inc. v. John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433, 1435 (8th Cir. 1991). Federal law provides for post-judgment interest "on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Huntington has a right to post-judgment interest under § 1961. Post-judgment interest will begin to accrue from the day judgment is entered and on the total award, including costs and attorneys' fees, until the judgment is satisfied. *Jenkins by Agyei v. Missouri*, 931 F.2d 1273, 1275 (8th Cir. 1991) ("The phrase 'any money judgment' in section 1961(a) is construed as including a judgment awarding attorneys' fees."); *see, e.g.*, *Minn. Voters All. v. City of Saint Paul*, No. 19-cv-358 (WMW/HB), 2021 WL 1100901, at *7 (D. Minn. Mar. 23, 2021). Post-judgment interest will be awarded at "a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." 28 U.S.C. § 1961(a).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. Plaintiff's Motion for Default Judgment [ECF No. 15] is **GRANTED**;

2. Plaintiff shall recover from Defendants jointly and severally an award of:

    a. $33,730.02 for six unpaid monthly installments from December 2021–May 2022;

    b. $211,771.29 to reflect the present value of 42 remaining installments;

    c. $8,470.86 as a 4% penalty;

    d. $3,938.19 in late fees;

    e. $30.00 as a returned ACH fee;

    f. $6,788.95 in attorneys' fees and costs; and

    g. post-judgment interest at the maximum rate allowed by law, accruing from the date judgment is entered until the judgment is satisfied and computed as described in 28 U.S.C. § 1961(b).

    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 24, 2022                    s/ Eric C. Tostrud
                                            Eric C. Tostrud
                                            United States District Court